[Docket No. 13]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

FARWA AZAM,

        Plaintiff,

    v.

RENA BITTER, Assistant Secretary,
Bureau of Consular Affairs, U.S.
Department of State, ANDREW
SCHOFFER, Deputy Chief of Mission,
U.S. Embassy in Pakistan, ANTONY
BLINKEN, Secretary of U.S.
Department of State

        Defendants.

Civil No. 23-4137 (RMB)

**OPINION**

**APPEARANCES**

Russ Nesevich,
NESEVICH LAW, LLC
Chester Avenue, Suite 105
Moorestown, NJ 08057

Joshua L. Goldstein (*pro hac vice*)
GOLDSTEIN IMMIGRATION LAWYERS
611 Wilshire Boulevard, Suite 317
Los Angeles California, 90017

    *On behalf of Plaintiff Farwa Azam*

Phillip R. Sellinger
United States Attorney

Hope Lu
Assistant United States Attorney

UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF NEW JERSEY
970 Broad Street, Suite 700
Newark, New Jersey 07102

*On behalf of Defendants Rena Bitter, Andrew Schoffer, and Antony Blinken*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court on a Motion to Dismiss filed by Defendants Rena Bitter, Andrew Schoffer, and Antony Blinken ("**Defendants**") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). [Docket No. 13.] Plaintiff Farwa Azam ("**Plaintiff**") opposes the Motion. [Docket No. 14.] No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).

The immigration visa process can be long, slow, and frustrating. For those living abroad and dreaming of joining their families in the United States, the process often takes years.[1] Plaintiff Farwa Azam is one of the many Americans unhappy with slow visa processing times. She has not seen her husband, Usman Manzoor, who lives in Pakistan, in years. She has sued to compel Defendants—high-ranking State Department officials—to speed up the processing of the immigrant visa petition she filed over three years ago on behalf of Mr. Manzoor.

This case appears to present a question of first impression in this District. Does Section 1202(b) of the Immigration and Nationality Act impose a mandatory,

---

[1] As of the date of this Opinion, United States Citizenship and Immigration Services estimates that 80% of Form I-130 Petitions for Alien Relatives filed by U.S. citizens on behalf of a spouse are completed within 51 months. *See Check Case Processing Times*, USCIS, https://egov.uscis.gov/processing-times/ (last visited March 4, 2024) [https://perma.cc/5JFH-7FXG].

nondiscretionary duty on Defendants to review and adjudicate individual visa petitions? The Court holds that it does. But although Section 1202(b) imposes such a duty, absent allegations that the State Department has abdicated or effectively abdicated its duty to process and adjudicate a specific visa application in bad faith, the Court is without subject matter jurisdiction to compel action given the discretion due to the State Department in setting the time, place, and manner of reviewing and adjudicating visa applications. Plaintiff makes no such allegations here. She asks this Court, not to restore her place in the visa processing line, but to move her to the front of the line. The Court has no power to do so. Accordingly, the Court **DISMISSES** Plaintiff's claims under the Administrative Procedures Act ("APA") and Mandamus Act to compel Defendants to adjudicate her visa petition for lack of subject matter jurisdiction. Additionally, it **DISMISSES** her Fifth Amendment due process claim for failure to state a claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Ms. Azam is a U.S. citizen and brings this action to compel Defendants to adjudicate a Form I-130 Petition for Alien Relative (the "**petition**" or "**application**") she filed with U.S. Citizenship and Immigration Services ("**USCIS**") in July 2020 on behalf of her husband, Usman Manzoor. [*See* Docket No. 1 ¶¶ 1–2 ("**Compl.**").] Mr. Manzoor is a Pakistani national and has been living in Pakistan while he awaits a determination on the visa petition Ms. Azam filed on his behalf. [Compl. ¶ 7.]

In April 2021, USCIS approved the visa petition and in August 2022, the National Visa Center determined that Mr. Manzoor's file was "Documentarily Qualified," meaning that the next step would be for Ms. Azam and Mr. Manzoor to be scheduled for a consular interview at the U.S. Embassy in Islamabad, Pakistan. [Compl. ¶¶ 18, 20.] Since then, neither Ms. Azam nor Mr. Manzoor have heard anything about the status of the visa petition.

Unsatisfied with the pace of the visa process, Ms. Azam filed this lawsuit on August 2, 2023 to compel Defendants to act on the visa petition. She alleges three causes of action. First, she alleges that Defendants unreasonably delayed the adjudication of Plaintiff's visa petition in violation of the APA, 5 U.S.C. §§ 555(b), 706(1). [Compl. ¶¶ 23–27.] Second, she seeks relief under the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to perform their nondiscretionary duty to adjudicate Plaintiff's visa petition under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."). [Compl. ¶¶ 28–34.] Finally, she alleges that Defendants' unreasonable delay in processing the visa petition violates her procedural and substantive due process rights protected by the Fifth Amendment. [Compl. ¶¶ 35–39.] Plaintiff requests that the Court compel Defendants to process the visa application within fifteen (15) days of an appropriate order, or as soon as reasonably possible. [Compl. ¶ 40.]

Defendants have moved to dismiss. They argue that Plaintiff's APA and Mandamus Act claims should be dismissed for lack of subject matter jurisdiction

because Plaintiff cannot establish that Defendants have a mandatory, nondiscretionary duty under Section 1202(b) to schedule the consular interview or otherwise adjudicate the visa application. [Docket No. 13-1 ("Defs.' Br.") at 11.] Should the Court find that it has subject matter jurisdiction, Defendants argue, in the alternative, that the Court should dismiss the APA and Mandamus Act claims for failure to state a claim because there has been no unreasonable delay in processing the visa petition. [Defs.' Br. at 21.] Second, Defendants argue that the Court should dismiss Plaintiff's Fifth Amendment claim for failure to state a claim because Plaintiff cannot allege a constitutionally protected liberty interest. [*Id.* at 28.]

Plaintiff opposes. [Docket No. 14 ("Pl.'s Br.").] First, she argues that the Court has subject matter jurisdiction over her APA and Mandamus Act claims because the plain text of Section 1202(b) imposes a mandatory duty on the State Department to completely adjudicate immigrant visa applications within a reasonable time. [Pl.'s Br. at 12–13.][2] Assuming the Court has jurisdiction, Plaintiff argues that she has properly alleged APA and Mandamus Act claims because Defendants' delay in processing the visa petition has been unreasonable. [*Id.* at 17.] Second, Plaintiff argues that she has a Fifth Amendment liberty interest "in seeing that § 1202(b) is effectuated collaterally with [the APA]" as well as an "implied fundamental right to family unity." [Pl.'s Br. at 25.]

---

[2] Plaintiff's Opposition Brief contains no internal pagination. The Court refers to page numbers in her brief according to the pagination reflected on the electronically stamped CM/ECF header.

Defendants submitted a reply brief in further support of their Motion to Dismiss on January 19, 2024. [Docket No. 17 ("Defs.' Reply").] The Motion is now ripe for adjudication.

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a claim can be dismissed for lack of subject matter jurisdiction. Plaintiff "bears the burden of demonstrating [the Court's] subject matter jurisdiction." *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). An attack on subject matter jurisdiction can be a "facial attack" (*i.e.*, that Plaintiff did not properly plead jurisdiction) or a "factual attack" (*i.e.*, that the facts of the case do not support jurisdiction). *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When reviewing a facial attack, as it appears that Defendants assert in their Motion to Dismiss, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).[3]

Additionally, Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. The

---

[3] In a factual attack on jurisdiction, the presumption of truth does not apply "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Courts may weigh and consider evidence "outside the pleadings" in a factual attack to decide whether subject matter jurisdiction is proper. *Aichele*, 757 F.3d at 358 (internal citation and quotation omitted).

party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Malleus*, 641 F.3d at 563.

## III.   ANALYSIS

### A.   As Alleged, the Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's APA and Mandamus Act Claims

#### 1.   *Mandamus Act and APA Framework*

Section 706(1) of the APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed." 8 U.S.C. § 706(1); *see also id*. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). An agency's failure to act, however, is not always remediable. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). Federal courts only have subject matter

jurisdiction to hear a claim alleging that an agency has unlawfully withheld or unreasonably delayed action "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64 ("[Section] 706(1) empowers a court only to compel an agency to perform a ministerial or nondiscretionary act[.]") (citation omitted)). In other words, "[Section] 706(1) grants judicial review only if a federal agency has a 'ministerial or nondiscretionary' duty amounting to a 'specific, unequivocal command.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (quoting *Norton*, 542 U.S. at 63–64).

The Mandamus Act similarly provides federal courts with the power to issue a writ of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is "an "extraordinary remedy" which "will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121, (1988). Where, as here, a plaintiff seeks to compel agency action unlawfully withheld or unreasonably delayed, courts treat claims under the APA and Mandamus Act co-extensively. *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) ("[T]he standards for obtaining relief [under the Mandamus Act and the APA] are essentially the same."); *Bokhari v. Bitter*, 2024 WL 244211, at *1 (D.N.J. Jan. 22, 2024) ("Plaintiff's Mandamus Act claim is subsumed by his APA claim."). Thus, the Court considers Plaintiff's APA and Mandamus Act claims together.[4]

---

[4] The Court expresses no view as to whether there is any theoretical daylight between an APA claim of unreasonable delay seeking purely declaratory relief and a

**B.    INA Section 1202(b)**

To establish that Defendants have a mandatory, nondiscretionary duty to schedule Ms. Azam and Mr. Manzoor for a consular interview and finally adjudicate the visa petition, Plaintiff primarily relies on Section 1202(b) of the INA. *See* 8 U.S.C. § 1202(b). That section of the statute provides that:

> **(b) Other documentary evidence for immigrant visa**. Every alien applying for an immigrant visa shall present a valid unexpired passport or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Secretary of State. The immigrant shall furnish to the consular officer with his application a copy of a certification by the appropriate police authorities stating what their records show concerning the immigrant; a certified copy of any existing prison record, military record, and record of his birth; and a certified copy of all other records or documents concerning him or his case which may be required by the consular officer. The copy of each document so furnished shall be permanently attached to the application and become a part thereof. In the event that the immigrant establishes to the satisfaction of the consular officer that any document or record required by this subsection is unobtainable, the consular officer may permit the immigrant to submit in lieu of such document or record other satisfactory evidence of the fact to which such document or record would, if obtainable, pertain. All immigrant visa applications shall be reviewed and adjudicated by a consular officer.

It is the last sentence of Section 1202(b) that Plaintiff argues imposes a mandatory duty on Defendants to completely adjudicate the visa petition: "All immigrant visa

---

Mandamus Act claim. Here, the APA and Mandamus Act claims function equivalently given that "the only APA claim that Plaintiff brings with respect to Defendants' conduct sounds in mandamus." *See Taj v. United States Dep't of State*, 2022 WL 17250302, at *5 (D.D.C. Nov. 28, 2022).

applications *shall be reviewed and adjudicated* by a consular officer." [Pl.'s Br. at 11 (quoting 8 U.S.C. § 1202(b)) (emphasis added).][5]

Across the country, federal district courts have been grappling with the meaning of the last sentence of Section 1202(b). Most courts have held that Section 1202(b) does not impose a clear duty to schedule a visa applicant for a consular interview or otherwise adjudicate an individual immigration visa petition and that accordingly, courts lack subject matter jurisdiction over APA and Mandamus Act claims seeking to compel such agency action. *Mueller v. Blinken*, --- F. Supp. ----, 2023 WL 4759245, at *3 (E.D. Va. July 17, 2023) ("8 U.S.C. § 1202(b) does not impose a specific, nondiscretionary duty on the Department of State to act on the plaintiffs' visa request."); *Ali v. United States Dep't of State*, --- F. Supp. ----, 2023 WL 3910249, at *5 (E.D.N.C. June 8, 2023); *Babamuradova v. Blinken*, 633 F. Supp.3d 1, 13–16 (D.D.C. 2022); *Nasab v. Blinken*, 2022 WL 4473922, at *1 (D.D.C. Sept. 26, 2022); *Khamrabaeva v. Blinken*, 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022); *Preston v. Ky. Consular Ctr.*, 2022 WL 3593052, at *11–15 (E.D. Ky. Aug. 22, 2022).

Other courts have held that the last sentence of Section 1202(b) "impose[s] a mandatory duty to review and adjudicate [all] beneficiary plaintiffs' visa applications" such that courts have subject matter jurisdiction to consider whether adjudication of a

---

[5] Plaintiff briefly mentions 8 U.S.C. § 1153(e) and 22 C.F.R. § 42.21(a) as additionally imposing mandatory duties on Defendants to process the visa petition. But 8 U.S.C. § 1153(e), which instructs that "visas … shall be issued" refers to statutory caps for visa numbers across each family-preference category of immigrant visas. And 22 C.F.R. § 42.21(a) addresses how a consular officer should treat an approved visa petition. Neither is a relevant source of mandatory authority in this case.

visa petition has been unlawfully withheld or unreasonably delayed. *See Iqbal v. Blinken*, 2023 WL 7418353, at \*6 (E.D. Cal. Nov. 9, 2023); *Kassem v. Blinken*, 2021 WL 4356052, at \*5 (E.D. Cal. Sept. 24, 2021) (holding Section 1202(b) "imposes a mandatory duty on consular officers to review and adjudicate immigrant visa applications"); *Ghalambor v. Blinken*, 2024 WL 653377, at \*3 (C.D. Cal. Feb. 1, 2024); *Ahmed v. U.S. Dep't of State*, 2024 WL 315705 (N.D. Cal. Jan. 26, 2024); *Hadiekhan v. Bitter*, 2024 WL 230872, at \*1 (C.D. Cal. Jan. 18, 2024); *Filazapovich v. Dep't of State*, 2021 WL 4127726, at \*17 (D.D.C. Sept. 9, 2021); *Gomez v. Biden*, 2021 WL 3663535, at \*20 (D.D.C. Aug. 17, 2021).

A third group of courts have taken a somewhat intermediate position. They have held that "to the extent that Section 1202(b) imposes a nondiscretionary duty to adjudicate [a visa] application … that duty attaches only *after* [the] visa application is complete—*i.e.*, after [the applicant] has appeared before a consular officer." *Farooq v. Blinken*, 2023 WL 5658357, at \*3 (C.D. Cal. Aug. 11, 2023) (emphasis added); *see also Khalili-Araghi v. Bitter*, 2023 WL 5988590, at \*4 (N.D. Cal. Sept. 13, 2023). That is because, under the regulations, a visa application is not formally executed until the applicant has "personally appear[ed] before a consular officer." *See* 22 C.F.R. § 40.1(l)(2). And upon formal execution of a visa application, the regulations state that the consular officer "***must*** issue the visa, refuse the visa ... or ... discontinue granting the visa." 22 C.F.R. § 42.81 (emphasis added).

The Court is not aware of another court in this District that has decided whether Section 1202(b) imposes a mandatory duty to adjudicate an individual immigration visa petition and whether, if it does, there is subject matter jurisdiction to compel the mandatory duty Section 1202(b) requires. Courts in this District have held, however, that there is no subject matter jurisdiction to compel USCIS to adjudicate an alien's application for lawful permanent resident status, *Qiu v. Chertoff*, 486 F. Supp. 2d 412 (D.N.J. 2007), or a nonimmigrant U-Visa petition, *Lemus v. McAleenan*, 2021 WL 2253522, at *1 (D.N.J. June 3, 2021).

## C. Section 1202(b) Imposes a Mandatory Duty to Adjudicate Visa Applications Including to Schedule Applicants for a Consular Interview

Section 1202(b) imposes a mandatory duty to review and adjudicate visa applications. Start with the text of Section 1202(b)'s final sentence. It requires that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b).  Those words mean what they say. The use of the mandatory "shall" imposes a nondiscretionary duty on consular officials to review and adjudicate immigrant visa applications. *See Iqbal*, 2023 WL 7418353, at *6 (citing *Gomez*, 2021 WL 3663535, at *20). That includes scheduling applicants for a visa interview, an unquestionably crucial component of the visa adjudication process. *See Iqbal*, 2023 WL 7418353 at *6; *Immigrant Visa Process, Step 11: Applicant Interview*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-

11-applicant-interview.html (last visited March 4, 2024) [https://perma.cc/CY7B-YRMV] (explaining that the applicant interview helps determines whether the applicant is eligible for the visa).

Defendants do not seem to disagree that once a visa applicant appears for a consular interview, the regulations—or the regulations vis-à-vis Section 1202(b)—impose a mandatory duty to adjudicate an individual visa application. [*See* Defs.' Reply at 1–2; 22 C.F.R. § 42.81.] They argue instead that because, as described above, the regulations do not consider a visa application to have been formally made until the visa applicant "personally appears before a consular officer," there is no mandatory duty to process visa applications until after an applicant appears for the consular interview. [Defs.' Br. at 11 (citing 22 C.F.R. § 40.1(l)).] But reading Section 1202(b) to impose a mandatory duty to adjudicate a visa application only after the applicant appears for the consular interview could leave an applicant in perpetual limbo where she "cannot take any actions to prod [the agency] to schedule an interview, but [she] also cannot bring suit to compel the agency to schedule the interview so it can adjudicate [her] application, as statutorily required." *Iqbal*, 2023 WL 7418353, at \*7. That would be an absurd result. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided").

Defendants also argue, and many courts have held, that read in its statutory context, Section 1202(b), titled "[o]ther documentary evidence for immigrant visa," simply sets forth what its title suggests—"what documentation a visa applicant must

provide and to whom they must submit the documentation." [Defs.' Br. at 18 (quoting *Babamuradova*, 633 F. Supp. at 14); *Mueller*, 2023 WL 4759245, at *2 (explaining that Section 1202(b)'s last sentence is best read together with its title as "cabining the State Department's discretion as to who may review and adjudicate immigrant visa applications").] As such, Defendants argue, Section 1202 "does not mandate that all applications actually be adjudicated." *Babamuradova*, 633 F. Supp. at 14.

The Court disagrees. As an initial matter, Section 1202(b)'s statutory title cannot override the plain meaning of its text. *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 221 (2012). Moreover, it is not clear to the Court why Section 1202(b) does not simply impose two requirements. First, a consular official must be the official who "review[s] and adjduciate[s]" the visa application. 8 U.S.C. § 1202(b). Second, that visa application "shall" in fact be "reviewed and adjudicated" by a consular official. *Id*. If Congress wanted to write a clear jurisdictional statement that only consular officials, rather than another type of official, can review visa applications, it could have said so. Absent clear language, the Court will not re-write the statute. *Temple Univ. v. United States*, 769 F.2d 126, 133 (3d Cir. 1985) ("[C]ourts should look to the plain language of, and not rewrite, statutes.").

### D.    The Court lacks Subject Matter Jurisdiction to Compel the State Department to Adjudicate a Visa Petition Absent Allegations of Deliberate Inaction or Bad Faith

Even though Section 1202(b) imposes a mandatory duty that State Department officials "shall" review and adjudicate visa petitions, this Court's subject matter

jurisdiction to compel such action is not automatic. Where, as here, there are no allegations that Defendants have abdicated their responsibility to review and adjudicate visa petitions or are, in bad faith, abusing their discretion in reviewing or adjudicating visa petitions, a plaintiff cannot use Section 1202(b) to leapfrog the line given the discretion inherent in the visa adjudication process. *See Work v. U.S. ex rel. Rives*, 267 U.S. 175, 177 (1925) ("Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion.").

The Court only has subject matter jurisdiction to compel agency action "when the agency is compelled by law to act within a certain time period." *Kale v. Mayorkas*, 2021 WL 2652124, at *4 (D.N.J. June 28, 2021) (Wolfson, J.); *see also Qiu*, 486 F. Supp. 2d at 421 (Chesler, J.) (dismissing APA claim where "there is no statutory or regulatory provision compelling adjudication within a certain time period"). For a Court to have APA or Mandamus Act jurisdiction for unreasonably delayed action, a plaintiff, at the threshold, must first identify a clear nondiscretionary duty. *See Norton*, 542 U.S. at 64. But after identifying that clear nondiscretionary duty, the plaintiff must also point to "provisions 'establishing a specific time frame for adjudication of [an immigration application].'" *Kale*, 2021 WL 2652124, at *4 (quoting *Qiu*, 486 F. Supp at 418). Here, Plaintiff satisfied the first step by pointing to Section 1202(b)'s final sentence requiring that the State Department review and adjudicate visa applications. But fatal to Plaintiff's claim here is that she fails to point to any statutory authority that

the State Department must review and adjudicate visa applications, including schedule consular interviews, by a certain time.[6]

Plaintiff argues that Defendants have "a nondiscretionary duty to adjudicate visas within a reasonable time." [Pl.'s Opp. at 12 (citing 5 U.S.C. § 706(1) and 5 U.S.C. § 555(b)).] True, but the agency's duty to resolve matters presented to them within a reasonable time must be considered in the context of the wide discretion the State Department retains relating to the time, place, and manner of visa petition adjudication. Relevant here, the "timing and scheduling of [visa] interviews is firmly committed to agency discretion by law." *Preston*, 2022 WL 3593052, at *9. Visa interviews are scheduled based on "the capacity of the consular offices and embassies .... "[i]f a post does not have capacity to interview someone—thereby reviewing and adjudicating their visa application—it cannot do so." *Babamuradova*, 2022 WL 4479801, at *9; *see Jamoussian v. Blinken*, 2022 WL 538424, at *2 (D.N.J. Feb. 23, 2022) ("There is no [] statutory or regulatory time limit with respect to a State Department consular officer's scheduling of a consular interview."); *Throw v. Mayorkas*, No. 22-5699, 2023 WL 2787222, at *3 (W.D. Wash. Apr. 5, 2023) ("[T]he Court can find no

---

[6] Plaintiff gestures to 8 U.S.C. § 1571(b) as relevant authority supplying the required time period for Defendants to complete adjudication on a visa application. [Pl.'s Opp. at 20–21.] 8 U.S.C. § 1571(b) addresses Congress's intent to eliminate any visa backlog within six months. But the plain text of § 1571(b) only sets an aspirational standard for when USCIS should determine immigration-benefit applications. Further, the statute is not applicable because it "applies to the processing of immigrant benefit applications by USCIS, not consular officials at the State Department." *El Centro Reg'l Med. Ctr. v. Blinken*, 2021 WL 3141205, at *4 & n.2 (S.D. Cal. July 23, 2021). "Accordingly, § 1571(b) cannot here carry the weight that plaintiff would like it to shoulder." *Arab v. Blinken*, 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (collecting cases).

statutory or regulatory obligation requiring the State Department to schedule a consular interview by a date certain.").

More generally, courts are reluctant to interfere with the discretion and flexibility Congress has conferred on the Executive Branch in the immigration context. *See, e.g.*, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'") (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)). Specifically, Congress has given the Secretary of State broad discretion to "administ[er] and . . . enforce[]" the INA, *see* 8 U.S.C. § 1104, and to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of State," 22 U.S.C. § 2651a. Congress has also given the Chiefs of Mission broad, discretionary authority to oversee U.S. government operations in foreign countries. 22 U.S.C. § 3927. Together, the Secretary of State and Chiefs of Mission exercise considerable discretion in processing immigrant visas worldwide, including by setting the time, place, and manner of visa applications and the scheduling of visa interviews. 8 U.S.C. § 1202(a) ("Every [noncitizen] applying for an immigrant visa . . . shall make application therefor in such form and manner and at such place as shall be by regulations prescribed."). Accordingly, absent a "specific time frame for adjudication … Congress did not intend to limit the discretion" of the State Department with respect to the time, place, and manner in reviewing and adjudicating visa applications. *Qiu*, 486 F. Supp. 2d at 418.

The Court cautions, however, that Defendants' discretion is not unfettered. There may be circumstances where a delay in scheduling a consular interview or adjudicating a visa application amounts to an unlawful abdication of the State Department's duty under Section 1202(b) to process and adjudicate visa applications. "To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Liu v. Michael Chertoff*, 2007 WL 2119427, at *1 (N.D. Cal. July 23, 2007).

The State Department retains its discretion to process visa applications at its own timing and according to its own priorities if it is in fact taking action to process visa applications. But where a plaintiff alleges, for example, deliberate inaction or bad faith on the part of the State Department in processing her individual visa petition, the Court has subject matter jurisdiction to hear a claim of unreasonable delay. *Cf. Xu v. Chertoff*, 2007 WL 2221401, at *3 (E.D. Mich. July 31, 2007) (explaining that even though the court did not have jurisdiction to compel final adjudication of I-485 application for an adjustment of immigration status, allegations of bad faith or deliberate inaction in adjudicating the application "would no longer fall within the scope of the discretion contemplated by the [s]tatute and could give rise to subject matter jurisdiction"); *Ma v. Rice*, 2009 WL 160288, at *6 (E.D. Mich. Jan. 22, 2009) (similar); *see also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2556 (2019) (Secretary of Commerce's broad authority under Census Act did not preclude judicial review under APA where plaintiffs uncovered bad faith). Additionally, a plaintiff may allege that the adjudication of a visa petition may be taking so unbelievably long that it effectively

amounts to a refusal to process the application. Simply put, the State Department cannot "relegate [a visa applicant] to a state of limbo, leaving them to languish there indefinitely." *See Kim v. Ashcroft*, 340 F. Supp.2d 384, 393 (S.D.N.Y. 2004); *see also Work*, 267 U.S. at 177 ("[A] duty may be discretionary within limits. [An officer] cannot transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them."). The State Department must be affirmatively working through its pile of visa petitions. But it is not the business of the Court to determine how it does so absent allegations of the kind described above.

Here, the Court has no jurisdiction to hear Plaintiff's allegations of garden-variety delay inherently part of the visa adjudication process. She alleges no bad faith or impropriety on the part of the Defendants in failing to schedule the consular interview or adjudicate the petition. She admits that she is simply "unclear what steps, if any, Defendants are actually taking to complete adjudication of [Mr. Manzoor's] visa application." [TAC ¶ 22.] Plaintiff may be in the dark about where the visa application stands, but that is not enough. Absent facts evidencing that Defendants, for example, (i) refused to process all visa petitions, *see, e.g.*, *Filazapovich*, 2021 WL 4127726, at *17; *Gomez*, 2021 WL 3663535, at *20;[7] (ii) refused to process Plaintiff's individual visa petition in bad faith; or (iii) have kept Plaintiff in the dark regarding the

---

[7] In *Filazapovich*, 2021 WL 4127726, at *17 and *Gomez*, 2021 WL 3663535, at *20, two federal courts read Section 1202(b) as imposing a mandatory duty to adjudicate visa petitions where the State Department declined to schedule interviews for diversity visa selectees for four months during the COVID-19 pandemic based on an interpretation of a proclamation from then-President Trump. Plaintiff has not made such extreme allegations here.

status of her individual visa petition for so long that it effectively amounts to a bad faith refusal to process Plaintiff's individual visa petition, the Court is without subject matter jurisdiction. The Court has the power to put Plaintiff back in the visa processing line. It does not have the power to help her cut the line.

One final caution. The Court trusts that relevant pleading standards, the threat of Rule 11, and ethical obligations will prevent plaintiffs from attempting to manufacture the Court's jurisdiction by baselessly pleading that the State Department has acted in bad faith in delaying adjudication of a visa petition or failing to schedule a consular interview. The factual circumstances described above that would properly confer subject matter jurisdiction upon the Court are no doubt rare. The Court has no reason to think that the men and women of the State Department, stationed in over 200 posts worldwide, are undertaking their visa adjudication responsibilities with anything other than the utmost respect and care. But things happen. *See cf. Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 2022 WL 837422, at *11 (S.D. Cal. Mar. 21, 2022) (plaintiff stated claim alleging affirmative, willful, and bad faith misconduct in USCIS's refusal to complete her naturalization application); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1147 (D. Ariz. 2008) (unexplained six-year delay in processing application for adjustment of status to permanent resident was unreasonable). The Court cannot summarily conclude or promise that every adjudication of every visa application all the time all over the world will always be in compliance with Section 1202(b). Where a plaintiff plausibly pleads that it was not, the Court must exercise its jurisdiction.

In sum, where, as here, a plaintiff only alleges garden variety delay in the processing of a visa application and wants the State Department to move faster, the Court is without jurisdiction under the APA or Mandamus Act to compel the State Department to review or adjudicate a visa application consistent with the command of INA Section 1202(b). Where a plaintiff's claim of unreasonable delay is based on allegations of deliberate inaction or bad faith, for example, such that the State Department has abdicated its duty to adjudicate and process visa applications under INA Section 1202(b), the Court has subject matter jurisdiction. Accordingly, the Court dismisses Counts I and II of the Complaint for lack of subject matter jurisdiction.[8]

### E.    Defendants Have Not Unreasonably Delayed Adjudication of the Visa Petition

Even if the Court had subject matter jurisdiction in this case, Plaintiff has failed to sufficiently allege that Defendants' delay in processing the visa petition was unreasonable. To assess whether agency action has been "unreasonably delayed," courts in this Circuit look to four factors:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agencies action. Third, the court should assess the consequences of the agency's delay. Fourth, the court should consider any plea of

---

[8] The Court will permit Plaintiff leave to amend. The Court would have subject matter jurisdiction over this case if Plaintiff can plausibly allege evidence of specific bad faith conduct on the part of Defendants in processing the visa application. She cannot, however, at this time, assert a bad faith refusal theory simply based on the amount of time elapsed since, as explained below, it has not been such an unreasonably long time that Ms. Azam and Mr. Manzoor have been waiting to appear for the consular interview that the Court can find that Defendants have effectively refused to adjudicate the application. *See infra* at IV.E.1.

administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

*Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998) (references omitted); *see also Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth similar factors for reasonableness under the APA).[9] Here, each factor weighs in favor of Defendants.

### 1.   *The Length of Time Elapsed*

Plaintiff's visa petition has been documentarily qualified since August 2022 meaning that Ms. Azam and Mr. Manzoor have been awaiting the consular interview for about 18 months. [Compl. ¶ 20; *Begum v. United States Dep't of State*, 2022 WL 16575703, at *7–9 (D. Md. Oct. 31, 2022) (calculating delay "from the earliest possible time that the Embassy could have scheduled the interview"); *Mahmood v. U.S. Dep't of Homeland Sec.*, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (calculating the delay "from the last Government action to the issuance of the opinion.") (internal quotation marks omitted). That is a long time. But the delay "falls well within the bounds of delays that other courts have found reasonable" of between three and five years,

---

[9] Plaintiff argues that the Third Circuit's unreasonably delayed test does not apply given the fact-intensive nature of determining whether delay was unreasonable. *See* [Pl.'s Opp. at 15–16.] Not so. The record alleged in the Complaint is more than sufficient for the court to decide the unreasonable delay claim at the motion to dismiss stage. *Preston*, 2022 WL 3593052 at *20–21 (collecting cases resolving unreasonable delay claims in visa adjudication cases on Rule 12(b)(6) motions and concluding sufficient facts exist to grant motion to dismiss); *see also Jamoussian*, 2022 WL 538424, at *2 (applying Third Circuit *Oil, Chem. & Atomic Workers Union* factors and granting motion to dismiss).

*Mueller*, 2023 WL 4759245, at *6. *Jamoussian*, 2022 WL 538424, at *2 (collecting cases finding that visa petition delays of between three and five years was not unreasonable).[10]  The first factor thus weighs in favor of Defendants.[11]

### 2.    *The Delay Judged Against the Context of Section 1202(b)*

The reasonableness of the delay in the context of Section 1202(b) also weighs in favor of Defendants. Again, Section 1202(b) does not impose a timeline for adjudicating visa applications. *See supra* at 14–17; *Eljalabi v. Blinken*, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) ("[S]imilar cases heard in this Circuit have confirmed that there is no congressionally imposed timeline for processing spousal visa applications."). The State Department is entitled to a considerable degree of deference in the immigration context. *See INS*, 526 U.S. at 425 (1999). As such, it is entitled to set the time, place, and manner of visa application adjudication. Plaintiff has pleaded no facts suggesting that Defendants have abused their discretion in processing the visa

---

[10] Even starting from when Plaintiff filed the visa petition in July 2020, Defendants are comfortably in the three-to-five-year processing window. Moreover, USCIS estimates that 80% of Form I-130 Petitions for Alien Relatives filed by U.S. citizens on behalf of a spouse, parent, or child under the age of 21 are adjudicated within 51 months. *See*, *supra* at n.1.

[11] Plaintiff argues that the reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years." [Pl.'s Opp. at 10 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).] The Court agrees the reasonableness of the delay is also informed by "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id*. The Court considers those complexities *infra* at factor four.

application, only that she is unsure what is taking so long, and that Defendants should hurry it up.

### 3. *The Consequences of Defendants' Delay*

The consequences of the delay alleged here no doubt impacts Plaintiff who has been separated from her husband for years pending final determination on the visa petition. Plaintiff has detailed the hardship she has faced in her husband's absence. [Compl. ¶¶ 8–9.] The Court is sympathetic to Ms. Azam's frustrations. Being separated from a loved one is painful. Even so, the consequences of the delay suffered by Ms. Azam are no different from any other visa petitioner. As of February 2024, there are 338,256 immigrant visa applicants in quite literally the exact same frustrating and stressful spot as Plaintiff—their applications are documentarily complete and they are waiting for a consular interview to be scheduled. *See Immigrant Visa Interview-Ready Backlog Report*, U.S. DEP'T OF STATE (Feb. 2024), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html [https://perma.cc/RHK4-ZFZM.] Many of those 338,256 immigrant visa applicants do not have the resources to try and skip the line. *See Memon v. Blinken*, 2023 WL 1438396, at *3 (D.D.C. Feb. 1, 2023). The Court does not mean to minimize the harm felt by Ms. Azam and Mr. Manzoor. But the painful consequences of the delay are inherent in our immigration system. The Court cannot "compel agency action where the result would be merely to expedite the consideration of a plaintiff's request ahead of others." *Ali*, 2023 WL 3910249, at *6. This factor also weighs against the delay being unreasonable or is, at best, neutral.

4. *Administrative Difficulties*

Finally, the fourth factor also weighs against a finding of unreasonable delay. The State Department is faced with a significant backlog of visa applications resulting from the COVID-19 pandemic. *See Suspension of Routine Visa Services*, U.S. DEP'T OF STATE (July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html [https://perma.cc/MN6C-LSRK]; Caleb Hampton, *Biden Administration Faces Backlog of 380,000 Waiting to Immigrate*, N.Y. TIMES (Feb. 3, 2021), https://www.nytimes.com/2021/02/03/us/immigrant-visas-consulates-backlog.html [https://perma.cc/G57N-57MH]; *Immigrant Visa Interview-Ready Backlog Report*, U.S. DEP'T OF STATE (Feb. 2024), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html [https://perma.cc/M6AY-GPU3]; *Memon*, 2023 WL 1438396, at *1 (noting the visa backlog affecting "tens of thousands of families around the world").] Defendants represent that they are "committed to resolving the immigrant visa backlog and transparently sharing the current status of [their] worldwide visa operations." *Supra* at n.1. Plaintiffs have pleaded no facts to suggest otherwise. Again, Plaintiff does not allege any bad faith or impropriety on the part of the Defendants suggesting that they have the capacity to interview Mr. Manzoor but refuse to do so. In fact, she admits that she is simply "unclear what steps, if any

Defendants are actually taking to complete adjudication of [Mr. Manzoor's] visa application." [TAC ¶ 22.]

Considering the broad statutory deference owed to the State Department in processing visa applications, the Court will not wade into Defendants' internal adjudicatory processes for determining how to process the mountain of visa applications more efficiently. *Norton*, 542 U.S. at 67 ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with [broad] congressional directives is not contemplated by the APA."). Doing so would only encourage more litigation and let those with the resources to bring a lawsuit to cut the line ahead of applicants with visa petitions that have been pending for an even longer amount of time. *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) ("Relief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved.") (quoting *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)

\*      \*      \*

Plaintiff has failed to state a claim for APA or mandamus relief. She must wait her turn in line like everyone else. That may be frustrating and stressful. But it is not unreasonable. Accordingly, the Court alternatively dismisses Counts I and II of the Complaint for failure to state a claim.

## F.    Plaintiff Has Failed to State a Fifth Amendment Violation

Plaintiff's Fifth Amendment claim fails because she has not alleged a constitutionally protected interest. To state a violation of either substantive or

procedural due process, a plaintiff must allege a deprivation of her life, liberty, or property by the government. *See Kerry v. Din*, 576 U.S. 86, 90, (2015); *see also Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) ("To succeed on a due process claim, Riley must first demonstrate that he was deprived of a liberty interest.") (citing *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)). Plaintiff argues that she has a constitutionally protected interest in having the "pending visa application she is sponsoring completely and finally adjudicated within a reasonable time [under Section 1202(b)]" and that she has an "implied fundamental right to family unity." [Pl.'s Br. at 25 (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972) and *Obergefell v. Hodges*, 576 U.S. 644 (2015)).] But the Constitution "does not recognize the right of a citizen spouse to have his or her alien spouse remain [or be admitted] in the country." *Fasano v. United States*, 230 F. App'x 239, 240 (3d Cir. 2007) (citing *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006)).[12] And although "'[m]arriage is a fundamental right,' … a citizen's right to marry is not impermissibly burdened when the government refuses her spouse a visa." *Colindres v. United States Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) (quoting *Obergefell*, 576 U.S. at 673). Count III of the Complaint is therefore dismissed.

---

[12] The Ninth Circuit in *Muñoz v. United States Dep't of State*, 50 F.4th 906, 916 (9th Cir. 2022), held that a United States citizen possessed protected due process liberty interest in the denial of her noncitizen husband's visa application. The Supreme Court has granted the Government's petition for certiorari in that case. *United States Department of State, et al. v. Muñoz, et al.*, No. 23-334, *cert. granted* (U.S. Jan. 12, 2024). In any event, *Muñoz* is not applicable because it only deals with the denial of a visa application which has not occurred here.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED and the Complaint is DISMISSED without prejudice**. An accompanying Order shall issue.

<u>**March 4, 2024**</u>                                         <u>**s/Renée Marie Bumb**</u>
Date                                                                           RENÉE MARIE BUMB
                                                                                 Chief United States District Judge